**AFFIRM in Part, REVERSE in Part, and RENDER; and Opinion Filed August 20, 2013.**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-12-00383-CV**

_____

**MID-CONTINENT CASUALTY COMPANY, Appellant**

**V.**

**VANESSA CASTAGNA, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 2012-15701**

**OPINION**

Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice Fillmore

In this insurance coverage dispute, appellant Mid-Continent Casualty Company (Mid-Continent) raises a single issue on appeal, asserting the trial court erred by denying its motion for summary judgment and by granting appellant Vanessa Castagna's motion for summary judgment. We reverse the trial court's judgment in part and affirm the trial court's judgment in part.

**Background**

Castagna and her husband entered into a "Construction Contract—Contract of Sale" (construction contract) with McClure Brothers Custom Homes, LP to build a residence in Frisco, Texas. Construction of the residence was completed and the closing of the purchase of the residence occurred in late 1999. The residence and the rights under the construction contract are

now owned by Castagna. She sued McClure Brothers Custom Homes, LP and McClure Brothers Homes, LLC regarding problems with the foundation of the residence in the lawsuit captioned *Vanessa Castagna v. McClure Brothers Custom Homes, LP & McClure Brothers Homes, LLC*, Cause No. 2008-10277-16, 16th Judicial District Court, Denton County, Texas. The dispute was the subject of binding arbitration. Mid-Continent defended McClure Brothers Custom Homes, LP and McClure Brothers Homes, LLC, in the arbitration under a reservation of rights. The arbitrator issued an arbitration award in favor of Castagna and against McClure Brothers Custom Homes, LP and McClure Brothers Homes, LLC, jointly and severally. The trial judge in Cause No. 2008-10277-16 rendered a final judgment confirming the arbitration award and incorporating the arbitrator's findings.

Great American Lloyd's Insurance Company (Great American) issued two commercial general liability (CGL) policies to "McClure Brothers Custom Homes, LP" for the policy periods March 31, 1998 to March 31, 1999, and March 31, 1999 to March 31, 2000. Mid-Continent issued CGL policy number 04-GL-000056544 to "McClure Brothers Custom Homes, LP," for the policy period March 31, 2001 to March 31, 2002 (the 2001 to 2002 policy). Mid-Continent issued CGL policy number 04-GL-000098247 to "McClure Brothers Homes, L.P., III," and CGL policy number 04-GL-000098279 to "McClure Brothers Homes LLC," "McClure Brothers Homes LP.," and "McClure Brothers Homes LP Two" for the policy period August 5, 2002 to August 5, 2003 (collectively the 2002 to 2003 policies). Mid-Continent issued CGL policy number 04-GL-000641650 to "McClure Brother Homes LLC," "McClure Brothers Homes LP," "McClure Brothers Homes LP II," "McClure Brothers Homes LP III," "McClure Brothers Homes LP Four," and "McClure Brothers Management Co" for the policy period August 5, 2006 to August 5, 2007 (the 2006 to 2007 policy). Castagna sued insurers Mid-Continent and Great American in the lawsuit underlying this appeal, Cause No. 2012-15701, in the 101st Judicial

District Court, Dallas County, Texas, seeking indemnity for the final judgment confirming the arbitration award. [1]

Castagna filed a motion for partial summary judgment against Mid-Continent in which she asserted Mid-Continent was obligated to pay the final judgment confirming the arbitration award because the damages awarded were covered under the 2001 to 2002 policy and the two 2002 to 2003 policies. Mid-Continent and Great American filed a traditional motion for summary judgment on the insurance coverage issues in which they asserted there is no insurance coverage under the Mid-Continent or Great American insurance policies because McClure Brothers Custom Homes, LP and McClure Brothers Homes, LLC were not insured during the policy periods in which the alleged property damage occurred and because the damages awarded fall within the contractual liability exclusion and the completed operations exclusion of the CGL policies. Mid-Continent and Great American also filed a no-evidence motion for summary judgment, arguing Castagna had not and could not present any evidence that Mid-Continent or Great American breached any insurance contract issued between 1998 and 2007, because there was no evidence that there was an occurrence or property damage prior to 2006, that the contractual liability exclusion in the CGL policies is not applicable, that the work was performed solely by an entity other than the insured or its subcontractor, and that the insured segregated damages covered under liability insurance and damages not covered under liability insurance.

Castagna announced a nonsuit without prejudice of her claims against Great American. The trial court signed a final judgment in which it granted Castagna's motion for summary judgment and denied Mid-Continent's motions for summary judgment. [2] The trial court's final

---

[1] An injured third party can enforce an insurance policy against the insurer once it has been established by judgment or agreement that the insured has a legal obligation to pay the injured party damages. *State Farm Cnty. Mut. Ins. Co. of Tex. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989); *Ohio Cas. Ins. Co. v. Time Warner Entm't Co.*, 244 S.W.3d 885, 888 (Tex. App.—Dallas 2008, pet. denied).

[2] The trial court ordered in the final judgment that as a result of the voluntary non-suit without prejudice of Great American, the judgment disposed of all matters between the parties and is a final judgment.

judgment awarded Castagna the amount of the arbitration award, pre-judgment interest, attorney's fees, and conditional attorney's fees for appeal. Mid-Continent filed this appeal of the denial of its motion for summary judgment and the grant of Castagna's motion for summary judgment.

## Standard of Review

The standards of review for traditional and no-evidence summary judgments are well known. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Gen Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex. App.—Dallas 2000, no pet.). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P.166a(c); *Nixon*, 690 S.W.2d at 548–49. We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Tex. Wings, Inc.*, 12 S.W.3d at 832–33. To defeat the no-evidence summary judgment, the nonmovant is required to produce more than a scintilla of probative evidence to raise a genuine issue of material fact on each challenged element of its claims. *See* TEX. R. CIV. P. 166a(i); *Tex. Wings, Inc.*, 12 S.W.3d at 833. When a party moves for a traditional summary judgment under rule 166a(c) and a no-evidence summary judgment under rule 166a(i), we first review the trial court's judgment under the standards of rule 166a(i). *Green v. McKay*, 376 S.W.3d 891, 898–99 (Tex. App.—Dallas 2012, pet. denied).

When, as here, both sides move for summary judgment, and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). We review the summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Howard v. INA Cnty. Mut. Ins. Co.*, 933 S.W.2d 212,

–4–

216 (Tex. App.—Dallas 1996, writ denied). If we conclude the trial court committed reversible error, we render the judgment the trial court should have rendered. *Id.*

We consider the evidence in the light most favorable to the nonmovant. *See Nixon*, 690 SW.2d at 549. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). When a party moves for summary judgment on multiple grounds and the trial court's order granting summary judgment does not specify the ground or grounds on which it was based, the party appealing that order must negate all possible grounds upon which the order could have been granted. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied). We will affirm the summary judgment if any theory advanced by the movant is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

## Applicable Law

"Under Texas law, an insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011) (citing *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). An insurer's duties to defend and indemnify are typically separate and distinct obligations. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). The insurer's duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy. *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 838 (Tex. App.—Dallas 2004, pet. denied). The duty to defend protects the insured by requiring a legal defense to allegations without regard to whether they are true, but it does not extend to allegations, true or false, that have not been made. *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009). The insurer's duty to

indemnify, on the other hand, is triggered not by allegations in the pleadings but by whether a plaintiff ultimately prevails on a claim covered by the policy. *Vines-Herrin Custom Homes, LLC v. Great Amer. Lloyds Ins. Co.*, 357 S.W.3d 166, 172 (Tex. App.—Dallas 2011, pet. filed). The duty to indemnify is "determined based on the facts actually established in the underlying suit." *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 334 S.W.3d 217, 219 (Tex. 2011); *see also Vines-Herrin Custom Homes*, 357 S.W.3d at 172. The duty to indemnify means the insurer will "pay all covered claims and judgments against an insured." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252–53 (5th Cir. 2011) (quoting *D.R. Horton-Tex., Ltd.*, 300 S.W.3d at 743).

An insurer has no duty to indemnify its insured if the policy at issue does not provide coverage for the claims made against the insured. *See W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 315 (5th Cir. 1993). Under Texas law, the insured bears the burden of establishing the insurer's duty to indemnify by presenting sufficient facts to demonstrate coverage under the policy. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008). However, when the insurer relies on the policy's exclusions to preclude coverage, the insurer bears the burden of proving that one or more of those exclusions applies. If the insurer shows that an exclusion applies, the burden shifts again and the insured must show that an exception to the exclusion brings the claim within coverage. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

**Discussion**

Mid-Continent contends the trial court erred by granting summary judgment in favor of Castagna, concluding Mid-Continent owed a duty to indemnify Castagna for the damages in the arbitration award, and denying Mid-Continent's motion for summary judgment.

*CGL Policy or Policies Providing Coverage for the Property Damage*

Mid-Continent's first argument concerns which Mid-Continent CGL policy or policies provided coverage for the "property damage" and when covered "property damage" first "occurred." Mid-Continent disputes that the facts and the arbitration award triggered the 2001 to 2002 and the 2002 to 2003 policies, and argues that the facts and the arbitration award triggered only the 2006 to 2007 policy. According to Mid-Continent, the facts and adjudicated liability in the arbitration, including the findings in the arbitration award, conclusively established the only covered "property damage" caused by an "occurrence," as those terms are defined and used in the CGL policies, for which McClure Brothers Custom Homes, LP would have a legal obligation to pay damages for breach of the implied warranty of good workmanship, occurred in late 2006 or early 2007. Therefore, Mid-Continent asserts the facts and adjudicated liability in the arbitration proceeding "triggered *only* the 2006–2007 CGL policy."

The "insuring agreement" paragraph of the Mid-Continent CGL policies at issue provides that Mid-Continent:

> . . . will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

The insurance applies to "property damage" caused by an "occurrence" during the policy period. The policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," and define "property damage" to mean:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

–7–

The relevant policy provisions from the Mid-Continent policies quoted above are identical to those the court considered in *Don's Building Supply, Inc. v. OneBeacon Insurance Co.*, 267 S.W.3d 20, 24–25 (Tex. 2008). Mid-Continent's CGL policies provide, "We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." The "insuring agreement" paragraph also provides, "This insurance applies to . . . 'property damage' only if: . . . (1) The . . . 'property damage' is caused by an 'occurrence' . . . .; and (2) The . . . 'property damage' occurs during the policy period." "Occurrence" is defined in the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it."

In *OneBeacon Insurance Co.*, homeowners sued the seller of a synthetic stucco product alleging the stucco was defective and allowed moisture to seep into wall cavities behind the siding, causing internal wood rot that progressed unnoticed because of the siding's undamaged exterior. 267 S.W.3d 22. The seller's CGL insurer sought a declaratory judgment that it had no duty to defend and indemnify because the damage was not discovered until after the policy period had ended. The Texas Supreme Court responded to certified questions from the Fifth Circuit Court of Appeals, including a question concerning the rule under Texas law for determining the time at which property damage occurs for purposes of an occurrence-based CGL policy. *Id.* at 23. Based upon the plain language of the policy, the supreme court rejected the "manifestation" rule that imposes a duty to defend only if the property damage became evident or discoverable during the policy term, and applied the "actual injury" rule, holding that property damage "occurs" when actual physical damage takes place, rather than when the damage manifests itself or becomes discoverable, and that "actual physical damage to the property

occurred" during the policy period. *Id*. at 24–30. The court explained that "the key date is when injury happens, not when someone happens upon it" and that the focus should be on "when damage comes to pass, not when the damage comes to light." *Id*. at 22. "The policy asks when the damage happened, not whether it was manifest, patent, visible, apparent, obvious, perceptible, discovered, discoverable, capable of detection, or anything similar. Occurred means when *damage* occurred, not when *discovery* occurred." *Id*. at 30. The court then concluded that property damage "occurred when the home in question suffered wood rot or some other form of physical damage." *Id*.

According to Mid-Continent, there is no evidence that cracks in walls and ceilings of the residence that occurred in 2001, 2002, or 2003 were the fault of McClure Brothers Custom Homes, LP or the result of any defective work performed by it or its subcontractors. Mid-Continent asserts there is no evidence the cracks were "property damage" caused by an "occurrence." The undisputed evidence in the underlying arbitration indicates that in 2001, Castagna discovered a hairline crack in the media room of the residence. She notified McClure Brothers Custom Homes, LP about this crack, and John McClure came to the residence to inspect it. Castagna had no reason to believe this was any kind of foundation issue, and she was not concerned about it at that time. Castagna testified the hairline crack came back again in the same room sometime in 2002 or 2003. She notified McClure Brothers Custom Homes, LP, and John McClure had the crack repaired by painting over it. McClure indicated to Castagna that the crack resulted from normal house "settling." Severe cracks appeared in the residence in spring 2007. Castagna was also unable to close and lock her back doors, bathroom door, wine cellar door, and other doors. Castagna notified McClure Brothers Custom Homes, LP about the doors and other issues, and, upon inspection, John McClure told Castagna the foundation of the house was "heaving."

Attached to Mid-Continent's amended motion for traditional summary judgment and no evidence summary judgment was testimony of engineer Don Illingworth regarding the timing of the foundation heaving. When asked how an event in 2001 could cause problems in 2006 or 2007, he testified that the floor elevation changes take a period of time. He testified the foundation elevation changes started some time prior to 2006 or 2007, although he did not know if it was 2001, 2004, or 2005.

The arbitration award contained findings relevant to the argument advanced by Mid-Continent. Mid-Continent is bound by the findings in the arbitration. *See Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010) (insurer in a coverage case will be barred from re-litigating particular issue from underlying liability case if issue raised in the coverage suit was raised and determined in liability suit, issue determined in liability suit was essential to judgment in liability suit, and necessary requirement of privity exists between insurer and insured). Indeed, Mid-Continent acknowledges in its brief that the evidence in the arbitration proceeding, "at least that portion of the evidence included in the summary judgment record in this case," supported the arbitrator's findings, and Mid-Continent confirms that it is not attempting to "re-litigate" the arbitrator's findings.[3] The arbitrator made the following findings, as incorporated and confirmed in the trial court's final judgment:

5. In mid-2001, minor cracks were discovered in the walls and ceilings of the Residence. McClure Bros. Custom Homes, LP was notified and made cosmetic repairs. Castagna was informed that this was normal shrinkage/settlement associated with a new home.

6. Minor cracks recurred in mid-2002.

7. In late 2006 or early 2007, a number of more severe cracks appeared. McClure Bros. Custom Homes, LP was notified. At that time, McClure

---

[3] *See CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002) (arbitration award has the same effect as a judgment of a court of last resort and is entitled to great deference by the courts); *see also Goldman v. Buchanan*, No. 05-12-00050-CV, 2013 WL 1281744, at *2 (Tex. App.—Dallas March 21, 2013, no pet.) (without a complete record of the evidence presented to the arbitrator at the arbitration proceedings, there can be no appellate review of the arbitrator's decision).

Bros. Custom Homes, LP informed Castagna that there was a problem with the foundation and gave her the name of a foundation repair company.

8.      The property damage commenced in 2001 and progressed through late 2006 to early 2007. The damage prior to late 2006 or early 2007 was not sufficient to accrue limitations and did not constitute discoverable movement of the foundation until it had progressed to the point of noticeable cracks in the walls, ceiling, tile, and other rigid elements of the Residence.

9.      The foundation of the Residence suffered structural failure in the southwest quadrant.

10.     The foundation failure and resulting damage were the result of McClure Bros. Custom Homes, LP's failure to take into account fill material placed under the Residence. The foundation that was designed and installed failed to take into account the Potential Vertical Rise ("PVR") of the fill material located beneath the Residence. The result of the actions of McClure Bros. Custom Homes, LP's subcontractors could not have been anticipated in 1998 and were not intended; the actions necessitated the repairs included in this Award.

14.     McClure Bros. Custom Homes, LP breached the implied warranty of good workmanship in that it failed to take into account the PVR of the fill material and other soil conditions when it designed and constructed the foundation for the Residence. As a result, McClure Bros. Custom Homes, LP and its subcontractors failed to design and construct a foundation that was capable of withstanding the movement of the soil which resulted in a structural failure of the foundation on a part of the Residence.

In response to Mid-Continent's no-evidence motion for summary judgment, Castagna was required to produce more than a scintilla of probative evidence to raise a genuine issue of material fact on each challenged element of her claims. *See* TEX. R. CIV. P. 166a(i); *Tex. Wings, Inc.*, 12 S.W.3d at 832–33. The arbitrator findings, which Mid-Continent acknowledges are supported by some evidence, were that the property damage commenced in 2001 and progressed through late 2006 to early 2007. Further, the arbitrator found the foundation failure and resulting damage were the unintended result of McClure Brothers Custom Homes, LP's and its subcontractors' failure to design and construct a foundation that was capable of withstanding the

–11–

movement of the soil which resulted in a structural failure of the foundation of part of the residence.

The summary judgment evidence established that "property damage," meaning injury to tangible property, occurred in 2001 and progressed through early 2007. Mid-Continent's argument on appeal that the record contained no evidence that the cracks that occurred in 2001, 2002, or 2003 were "property damage" caused by an "occurrence," as opposed to normal shrinkage or settling associated with a new home, is unpersuasive. There was more than a scintilla of summary judgment evidence admitted in the arbitration proceeding which supported the arbitrator's fact findings that "property damage" "occurred," as those terms are defined under the CGL policies at issue, during the 2001 to 2002, 2002 to 2003, and 2006 to 2007 policy periods. We conclude the trial court did not err in denying Mid-Continent's no-evidence motion for summary judgment on these asserted grounds.

To recover under the 2001 to 2002 or 2002 to 2003 policies, Castagna was required to establish that a judgment was rendered based upon an occurrence that caused property damage during the policy period of the 2001 to 2002 policy or the policy period of the 2002 to 2003 policies. As discussed above, the evidence supported the arbitrator's findings that the cracks that occurred in 2001, 2002, or 2003 were "property damage" caused by an "occurrence" as those terms are defined under the 2001 to 2002 policy and the 2002 to 2003 policies. We conclude that coverage was "triggered" in accordance with the terms of the CGL policies covering 2001 to 2002, 2002 to 2003, and 2006 to 2007. *See OneBeacon Ins. Co.*, 267 S.W.3d at 24 ("Considering these [policy] provisions together and reading them for their plain meaning, we hold that property damage under this policy occurred when actual physical damage to the property occurred. The policy says as much . . . ."); *see also Union Ins. Co. v. Don's Bldg.*

*Supply, Inc.*, 266 S.W.3d 592, 594–95 (Tex. App.—Dallas 2008, pet. denied) (quoting *OneBeacon Ins. Co.*, 267 S.W.3d at 24) (analyzing issue of duty to defend).

Mid-Continent asserts that because the arbitration award does not allocate any damages to any particular time frame and Castagna did not present any evidence allocating or segregating damages by time frames corresponding to Mid-Continent CGL policy periods, even if the 2001 to 2002 or 2002 to 2003 policies were triggered, Castagna failed to establish her entitlement to indemnity under those policies as a matter of law. We disagree. As is discussed above, the arbitrator's unchallenged findings that the property damage commenced in 2001 and progressed through late 2006 to early 2007 implicate the 2001 to 2002, 2002 to 2003, and 2006 to 2007 policies. The authority cited by Mid-Continent in support of this argument concerns the doctrine of concurrent causes, which relates to apportioning or distinguishing covered losses from non-covered losses. *See Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (under doctrine of concurrent causes, when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril). Mid-Continent has provided no authority to support an argument that Castagna had the burden to prove an allocation of covered property damage to particular policy periods. *See Keene Corp. v. Ins. Co. of N. Amer.*, 667 F.2d 1034, 1047–49 (D.C. Cir. 1981) (it is the insured's right to select which of the triggered policies provides indemnification; each insurer is fully liable for indemnification); *see also Amer. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 855 (Tex. 1994) (if single occurrence triggers more than one policy covering different policy periods, insured may select from multiple consecutive insurance policies the one under which it is to be indemnified; "insured's indemnity limit should be whatever limit applied at the single point in time during the coverage periods of the triggered policies when the insured's limit was highest").

We conclude the trial court did not err in denying Mid-Continent summary judgment that property damage did not occur during the 2001 to 2002 and 2002 to 2003 policy periods, and the trial court did not err in granting summary judgment in favor of Castagna that the damages awarded Castagna were for "property damage" that "occurred" during the 2001 to 2002 and 2002 to 2003 policy periods.

*"Who Is an Insured" Provisions of the CGL Policies*

Mid-Continent next argues that the 2006 to 2007 policy is the only policy to provide coverage for the damages awarded to Castagna, but the judgment debtors—homebuilder McClure Brothers Custom Homes, LP, and its general partner, McClure Brothers Homes, LLC— are not insureds under the 2006 to 2007 policy.

With regard to "who is an insured," the 2006 to 2007 policy provides:

1.      If you are designated in the Declarations as:

                               \* \* \*

      b.     A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

      c.     A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

The portion of the policy defining who is an insured contains a final clause that "[n]o person is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations."

Under the 2006 to 2007 CGL policy, "McClure Brothers Homes LLC," as homebuilder, "McClure Brothers Homes LP," "McClure Brothers Homes LP II," "McClure Brothers Homes LP III," "McClure Brothers Homes LP Four," and "McClure Brothers Management Co" are named insureds. Mid-Continent contends the trial court erred in granting summary judgment and

–14–

denying its motion for summary judgment, because neither McClure Brothers Custom Homes, LP, or its general partner, McClure Brothers Homes, LLC, are insureds under the 2006 to 2007 policy.[4]

Under the 2006 to 2007 policy, "McClure Brothers Homes LLC" is a named insured. The arbitrator specifically found that "McClure Brothers Homes, LLC is the general partner of McClure Bros. Custom Homes, LP and is, therefore, jointly and severally liable." While McClure Brothers Homes LLC, a limited liability company, is a named "insured," Mid-Continent contends McClure Brothers Homes LLC is not actually insured because the 2006 to 2007 CGL policy provides that no organization is an insured "with respect to the conduct of any current or past partnership . . . or limited liability company" not shown as a named insured. Because McClure Brothers Custom Homes, LP is not listed as a named insured and because McClure Brothers Homes LLC is being held liable for the acts or omissions of McClure Brothers Custom Homes, LP, Mid-Continent contends the trial court erred in denying its motion for summary judgment on the ground that it did not owe indemnity to Castagna under the 2006 to 2007 policy.

Insurance policies are controlled by rules of interpretation and construction applicable to contracts generally. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Id.* Terms in contracts, including insurance contracts, are given their plain, ordinary, and generally accepted meaning unless the instrument itself shows them to have been used in a technical or different sense. *W.*

---

[4] In response to Mid-Continent's motion for summary judgmnet, Castagna argues Mid-Continent created a typographical error in the 2006 to 2007 policy by leaving off "Custom" from the name of the insured "McClure Brothers Homes, LP." In support of this argument, Castagna relied on the affidavit of John McClure as summary judgment evidence. However, Mid-Continent objected to John McClure's affidavit, and the trial court sustained the objection and struck the affidavit. Although Castagna states in a footnote to her appellate brief that the trial court erred in striking John McClure's affidavit, Castagna did not file a cross-appeal asserting the trial court erred by striking this evidence.

*Reserve Life Ins. Co. v. Meadows*, 261 S.W.2d 554, 564 (Tex. 1953). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *CBI Indus., Inc.*, 907 S.W.2d at 520. The interpretation of an unambiguous contract is a question of law for the court. *See Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997).

The 2006 to 2007 policy provides that members and managers of a limited liability company are also insureds; however, we agree with Mid-Continent that there is no summary judgment evidence that McClure Brothers Custom Homes, LP was a member or manager of McClure Brothers Homes, LLC. With regard to Mid-Continent's duty to indemnity Castagna under the 2006 to 2007 policy, the arbitrator found McClure Brothers Homes LLC jointly and several liable for the acts or omissions of McClure Brothers Custom Homes, LP, a limited partnership which is not a named insured under that policy. The CGL policy provides that no organization is an insured "with respect to the conduct of any current or past partnership . . . or limited liability company" not shown as a named insured. Because McClure Brothers Homes, LLC's liability arose out of a limited partnership which is not entitled to coverage under the 2006 to 2007 policy, Mid-Continent does not owe indemnity to Castagna under the 2006 to 2007 policy. "By stating that '[n]o person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown in the Declarations as a Named Insured,' the policy clearly precludes coverage for entities that are not named in the policy and for related corporate entities." *Alea London Ltd. v. Bickford*, 627 F. Supp. 2d 763, 770 (S.D. Tex. 2009); *see also Bott v. J.F. Shea Co., Inc.*, 299 F.3d 508, 511 (5th Cir. 2002).[5]

Because McClure Brothers Homes LLC, the named insured under the 2006 to 2007 policy, was not insured for the liability of McClure Brothers Custom Homes, LP, an entity not

---

[5] *See also Hardeman v. Commonwealth Lloyds Ins. Co.*, No. 04-98-00487-CV, 1999 WL 16063, *4 (Tex. App.—San Antonio, Jan. 13, 1999, pet. denied) (not designated for publication) (Precon Structures, Inc. was only named insured under policy; policy expressly provided activity from a joint venture not covered if joint venture not shown on the insurance declarations; Precon's activities related to joint venture not covered under policy).

listed as an insured under that policy, we conclude the 2006 to 2007 policy provided no coverage for the damages awarded by the arbitrator and included in the final judgment, and Mid-Continent did not owe indemnity to Castagna under the 2006 to 2007 policy.[6] *See River Entm't*, 998 F.2d at 315 (no duty to indemnify if the policy at issue does not provide coverage). The trial court erred in failing to grant Mid-Continent's motion for summary judgment that it did not owe a duty to indemnify Castagna under CGL policy number 04-GL-000641650, the 2006 to 2007 policy. Accordingly, we reverse, in part, the final judgment and render judgment that Mid-Continent has no duty to indemnify Castagna under CGL policy number 04-GL-000641650 for the damages awarded Castagna.

## *"Your Work" Policy Exclusion*

Mid-Continent next argues that, assuming McClure Brothers Custom Homes, LP and McClure Brothers Homes, LLC are insureds under the 2006 to 2007 policy, the "your work" exclusion of that policy, as modified by policy endorsement CG 22 94 10 01 "Exclusion—Damage to Your Work Performed by Subcontractors on Your Behalf," excludes coverage for "property damage" to McClure Brothers Custom Homes, LP's completed "work."

The 2006 to 2007 Mid-Continent CGL policy contains a "your work" exclusion which provides the bodily injury and property damage liability insurance does not apply to:

(*l*)     Damage to Your Work

---

[6] Mid-Continent issued policy number 04-GL-000098247 to "McClure Brothers Homes, L.P., III," as general contractor, and policy number 04-GL-000098279 to "McClure Brothers Homes LLC," as homebuilder/remodeler, "McClure Brothers Homes LP.," and "McClure Brothers Homes LP Two" for the policy period 2002 to 2003. In footnotes of its brief, Mid-Continent states the same argument—that "neither of the judgment debtors is an 'insured'"—is true of the 2002 to 2003 policies and that, if this Court concludes there is a duty to indemnify under the 2002 to 2003 policies, "the arguments [with regard to the 2006 to 2007 policy] should be applied to the 2002 to 2003 policies as well." However, because Mid-Continent did not move for summary judgment on a ground that McClure Brother Custom Homes, LP and McClure Brothers Homes LLC were not insureds under the 2002 to 2003 policies and did not assert McClure Brother Custom Homes, LP and McClure Brothers Homes LLC were not insureds under the 2002 to 2003 policies in response to Castagna's motion for summary judgment, we do not address those policies here. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex. 1992) (in appeal from summary judgment, issues an appellate court may review are those the movant actually presented to the trial court); *see also* TEX. R. CIV. P. 166a(c) (issues not expressly presented to trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979).

"Property damage" to "your work"[7] arising out of it or any part of it and included in the "products-completed operations hazard".[8]

Under the 2001 to 2002 and 2002 to 2003 policies, the "your work" exclusion contained an exception that provided the exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor." However, under the 2006 to 2007 policy endorsement CG 22 94 10 01, the exception for work performed on the insured's behalf by a subcontractor was removed.

According to Mid-Continent, the "work" of McClure Brothers Custom Homes, LP includes work performed by it or on its behalf by subcontractors. Mid-Continent argues the "actual facts and the arbitrator's findings conclusively established that both the faulty foundation and the entire house was McClure Brothers Custom Homes, LP's 'work' under this definition, and, thus, Mid-Continent owes no duty to indemnify." Mid-Continent states McClure Brothers Custom Homes, LP was the homebuilder and general contractor and "the undisputed evidence "showed McClure Brothers Custom Homes LP built the residence, and/or that McClure Brothers Custom Homes, LP hired subcontractors to perform the construction on its behalf, and/or that McClure Brothers Custom Homes, LP and its subcontractors built the foundation." Mid-Continent notes the arbitrator's finding that McClure Brothers Custom Homes, LP and its

---

[7] The policy defines "your work" to mean "(1) [w]ork or operations performed by you or on your behalf, and (2) [m]aterials, parts or equipment furnished in connection with such work or operations." Under the policy, "your work" includes "(1) [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and (2) [t]he providing of or failure to provide warnings or instructions."

[8] The 2006 to 2007 CGL policy provides that "products-completed operations hazard" includes "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work'" except:

(1)   Products that are still in your physical possession; or

(2)   Work that has not been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

  (a)   When all of the work called for in your contract has been completed.
  (b)   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
  (c)   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

subcontractors were responsible for the faulty foundation design and construction. Therefore, Mid-Continent states the entire residence is McClure's "work" as defined in the policy. In her appellate brief, Castagna concedes policy endorsement CG 22 94 10 01 "that eliminated the subcontractor prevents coverage" under the 2006 to 2007 policy.

We have concluded above that the 2006 to 2007 policy provided no coverage for the damages awarded by the arbitrator and included in the final judgment, and Mid-Continent did not owe indemnity to Castagna under the 2006 to 2007 policy. Therefore, we need not address this argument.[9] *See* TEX. R. APP. P. 47.1.

*Contractual Liability Exclusion*

Mid-Continent next argues the 2001 to 2002, 2002 to 2003, and 2006 to 2007 CGL policies contain a contractual liability exclusion that bars coverage for the damages awarded to Castagna in the arbitration award and the final judgment.[10]

The contractual liability exclusions of the Mid-Continent CGL policies at issue provide that "[t]his insurance does not apply to":

> b. Contractual Liability
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1) That the insured would have in the absence of the contract or agreement; or
>
> (2) Assumed in a contract or agreement that is an "insured contract",[11] provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. . . .

---

[9] We note that the 2001 to 2002 and 2002 to 2003 policies do not contain CGL policy endorsement CG 22 94 10 01, and Mid-Continent acknowledges in its brief that the "your work" exclusion under the 2001 to 2002 and 2002 to 2003 policies "would not apply to bar coverage under those policies."

[10] Unlike its arguments concerning "who is an insured" and the "your work" exclusion which were specific to the 2006 to 2007 policy, in its motion for summary judgment, Mid-Continent asserted that the damages awarded Castagna were excluded by the contractual liability exclusion of "each and every potentially applicable Mid-Continent policy."

[11] "'Insured contract' is a commonly used term of art in Texas insurance law, usually defined by the insurance policy to mean a separate contract that acts as insurance." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011) (policy in dispute defined "insured contract" as seven types of insurance contracts, including one to assume tort liability of another to pay damages relating to "bodily injury" or "property damage") (citing *Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 124–25.

–19–

Pertinent to Mid-Continent's contention that the contractual liability exclusion bars coverage and a duty to indemnify, in the arbitration award—the document establishing the basis for the liability of McClure Brothers Custom Homes, LP and McClure Brothers Homes, LLC— the arbitrator made the following findings:

1.      On June 24, 1999, Neil Castagna and Vanessa Castagna entered into Construction Contract, Contract of Sale with McClure Bros. Custom Homes, LP (the "Contract") whereby the Castagnas agreed to purchase a residence, 1 Savannah Ridge, Frisco, Texas 75034 (the "Residence").

* * *

11.     The [construction] Contract stated that a Warranty Addendum was attached to the document. The Warranty Addendum was not attached. There was no evidence presented to suggest that a Warranty Addendum ever existed. There was no discussion of a limited warranty at the time the [construction] Contract was signed.

12.     During the closing, which occurred at the title company, a limited warranty document was signed by the Castagnas. The limited warranty was not the Warranty Addendum, it was not incorporated into the contract, and it was not supported by separate consideration. In addition, the limited warranty referenced a warranty booklet. There was no evidence presented that the warranty booklet was presented to the Castagnas or that it ever existed.

13.     The implied warranty of good workmanship associated with the [construction] Contract and the Residence was not excluded.

14.     McClure Bros. Custom Homes, LP breached the implied warranty of good workmanship in that it failed to take into account the PVR of the fill material and other soil conditions when it designed and constructed the foundation for the Residence. As a result, McClure Bros. Custom Homes, LP and its subcontractors failed to design and construct a foundation that was capable of withstanding the movement of the soil which resulted in a structural failure of the foundation on a part of the Residence.

* * *

17.     Section 38.001 Texas Civil Practice & Remedies Code allows claimants to recover attorneys' fees for breach of an oral or written contract. Section 38.001 does not address claims for express warranty or implied warranty. The Texas Supreme Court has held that breach of warranty and breach of contract are not the same cause of action. When confronted with the

–20–

question as to whether attorneys' fees could be recovered under Section 38.01 for breach of express warranty, the Texas Supreme Court ruled that attorneys' fees could be recovered for breach of express warranty under Section 38.001. The court ruled that the express warranty claim was part of the basis of the bargain allowing for recovery of attorneys' fees. *Medical City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55 (Tex. 2008). Castagna entered into the Contract for the construction of the Residence. There is a warranty of good workmanship that accompanies a contract for the construction of a residence in Texas. The implied warranty of good workmanship was created by the [construction] Contract and it set the standard to measure performance under the [construction] Contract.[12] Thus, the implied warranty of good workmanship is part of the basis of the bargain and reasonable attorneys' fees in the amount of $32,543.00 are awarded to Castagna.

Mid-Continent contends there is no evidence of any non-contractual basis for McClure Brothers Custom Homes, LP's liability to Castagna. Mid-Continent notes that the arbitrator did not find McClure Brothers Custom Homes, LP liable on any basis other than breach of implied warranty of good workmanship, and the arbitrator found the implied warranty of good workmanship which McClure Brothers Custom Homes, LP breached was created by the construction contract and "set the standard to measure the performance under the [construction] Contract." Mid-Continent argues that the damages were to the subject of the construction contract—the residence, and by awarding attorneys' fees under section 38.001 of the civil practice and remedies code, the arbitrator "treated" the breach of implied warranty as a contract claim. Although the Texas Supreme Court has recognized that claims for breach of an implied warranty may sound in tort or contract, such a claim sounds in contract when the damages sought are for damage to the subject matter of the contract only. *See*, *e.g.*, *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415, 417 (Tex. 2001). We note the arbitrator denied

---

[12] The construction contract provides that the Residential Construction Liability Act (RCLA) applies to construction defects and any dispute or claims regarding construction defects in connection with the improvements to the real property. *See* TEX. PROP. CODE ANN. § 27.001 *et seq*. (West 2000 & Supp. 2012). The parties to the construction contract agreed the RCLA controls to the extent of any conflict between the RCLA and any other law, including the deceptive trade practices act. The arbitrator noted the following in his findings:

> On March 27, 2008, the Appeals Panel of the Texas Residential Construction Commission determined that the implied warranty of good workmanship had not been waived. This finding creates a rebuttable presumption on behalf of Castagna. The evidence presented at the arbitration hearing supports the finding of the Appeal Panel.

Castagna's claim for negligence "in that the claim is barred by the economic loss rule." *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (under economic loss rule, if plaintiff only seeks recovery for loss or damage to the subject matter of a contract, his action is ordinarily on the contract).[13]

We are not persuaded, however, by Mid-Continent's contention that the facts of the case and the arbitrator's findings established McClure Brothers Custom Homes, LP's liability resulted from its contractual assumption of liability for defective work, triggering the contractual liability exclusion under the CGL policies at issue. Mid-Continent asserts that applying the reasoning of *Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010) (*Gilbert*) to the arbitration award, the only legally correct interpretation the trial court could have made was that the contractual liability exclusion in the CGL policies applies and excludes coverage for the damages awarded in the arbitration and the final judgment. Therefore, Mid-Continent argues the contractual liability exclusion bars coverage under the Mid-Continent CGL policies, and the trial court erred in granting summary judgment in favor of Castagna.

Castagna responds that, because an implied warranty of good workmanship arises under the common law, the breach of that common law implied warranty was not contractual for purposes of the contractual liability exclusion. According to Castagna, liability for breach of the implied warranty of good workmanship was not one "assumed" by McClure Brothers Custom Homes, LP under the "agreement or contract" and excluded by a contractual liability exclusion, but was liability imposed for breach of the common law implied warranty. Castagna argues the legal theory on which liability is based, *i.e.* whether tort or contract, is irrelevant to coverage, and the label used by the arbitrator in assessing liability is not dispositive. Rather, the actual facts

---

[13] The summary judgment record contains no petition or other pleading setting out Castagna's claims asserted against McClure Brothers Custom Homes, LP and McClure Brothers Homes, LLC in cause number 2008-10277-16 and before the arbitrator.

control, and here McClure Brothers Custom Homes, LP was found liable for breach of a duty imposed by Texas common law. Finally, Castagna argues *Gilbert* does not support Mid-Continent's argument because in *Gilbert* the court held the contractual liability exclusion applies when an insured is obligated to pay damages as a result of liability it expressly assumed in a contract.

Through the implied warranty of good workmanship, the common law recognizes that a new home builder should perform with at least a minimal standard of care. This implied warranty requires the builder to construct the home in the same manner as would a generally proficient builder engaged in similar work and performing under similar circumstances. *Centex Homes v. Buecher*, 95 S.W.3d 266, 273 (Tex. 2002) (plurality opin.); *see also Barnett v. Coppell N. Tex. Court, Ltd*, 123 S.W.3d 804, 823 (Tex. App.—Dallas 2003, pet. denied). Thus, the implied warranty of good workmanship attaches to a new home sale if the parties' agreement does not provide how the builder or the structure is to perform. *Buecher*, 95 S.W.3d at 273; *see also Welwood v. Cypress Creek Estates, Inc.*, 205 S.W.3d 722, 730–31 (Tex. App.—Dallas 2006, no pet.) (because purpose of implied warranty of good workmanship is to serve as a "default warranty," it applies unless and until parties express a contrary intention).

In *Gilbert*, the Dallas Area Rapid Transit Authority (DART) contracted with Gilbert Texas Construction, L.P. (Gilbert) to construct a light rail system. Under the contract, Gilbert was required to protect the work site and surrounding properties. During construction, a building owned by RT Realty (RTR) and located adjacent to the work site was flooded. RTR sued DART, Gilbert, and others involved in the construction under statutory and common law theories of liability and for liability as a third-party beneficiary under the DART contract. *Id*. at 122. The trial court granted summary judgment on the basis of governmental immunity, dismissing all but RTR's claim for breach of contract against Gilbert. *Id*. at 123. Gilbert settled the breach of

–23–

contract claim with RTR. Underwriters at Lloyd's London (Underwriters), Gilbert's excess liability insurer, denied coverage on the basis of the contractual liability exclusion, contending the exclusion precluded coverage because at the time of the settlement, Gilbert's only legal obligation to pay was under the contract. Gilbert sued Underwriters. *Id*. The supreme court concluded the contractual liability exclusion applied to the breach of contract claim and the exception for liability the insured would have absent its contract was inapplicable. *Id*.

The *Gilbert* court held that the contractual liability exclusion "means what it says," and "applies when the insured assumes liability for bodily injury or property damages by means of contract, unless an exception to the exclusion brings a claim back into coverage or unless the insured would have liability in the absence of the contract or agreement." *Id*. at 132. Specifically, the court held that RTR's breach of contract claim was founded on an obligation or liability contractually assumed by Gilbert within the meaning of the contractual liability exclusion. *Id*. at 127. Independent of its contractual obligations, Gilbert owed RTR the duty to comply with the law and to conduct its operations with ordinary care so as not to damage RTR's property, and "absent its immunity it could be liable for damages it caused by breaching its duty." *Id*. In its contract with DART, Gilbert undertook a legal obligation to protect improvements and utilities on property adjacent to the construction site and to repair or pay for damage to such property "resulting from a failure to comply with the requirements of this contract *or* failure to exercise reasonable care in performing the work." *Id*. "The latter obligation—to exercise reasonable care in performing its work—mirrors Gilbert's duty to RTR under general law principles." *Id*. "Independent of its contractual obligations, Gilbert owed RTR the duty to comply with law and to conduct its operations with ordinary care so as not to damage RTR's property, and . . . it could be liable for damages it caused by breaching its duty." *Id*. However, the assumption of contractual liability that extended beyond this "general law" and

formed the basis for the exclusion to apply was Gilbert's contractual promise to repair or pay for damages to property resulting from Gilbert's failure to comply with the requirements of its contract with DART. *Id.*[14] Because the trial court had granted summary judgment on all theories of liability except breach of contract, Gilbert's only remaining liability was liability in excess of what it had under general law principles. *Id*. at 127. Thus, the court concluded RTR's breach of contract claim was founded on an obligation or liability contractually assumed by Gilbert, within the meaning of the policy exclusion. *Id.*[15]

On this record, we are unpersuaded by Mid-Continent's expansive interpretation of the holding in *Gilbert* in support of its argument that the contractual liability exclusion of the Mid-Continent 2001 to 2002 or 2002 to 2003 CGL policies at issue bars coverage for the damages awarded Castagna in the arbitration award and final judgment. In this case, the arbitrator found that the implied warranty of good workmanship associated with the construction contract and the residence was not excluded under the construction contract, and McClure Brothers Custom Homes, LP breached the implied warranty of good workmanship by failing to take into account the PVR of the fill material and other soil conditions when it designed and constructed the foundation for the residence. Here, unlike *Gilbert*, McClure Brothers Custom Homes, LP did not assume any contractual obligation in addition to, or that extended beyond, the "general law" of implied warranty of good workmanship. *See id*. at 127; *see also Sipes v. Langford*, 911 S.W.2d 455, 457 (Tex. App.—Texarkana 1995, writ denied) ("Implicit in every contract is a common-law duty to perform the terms of the contract with care, skill and reasonable experience."). The

---

[14] The *Gilbert* court observed that "[t]he obligation to repair or pay for damage to RTR's property 'resulting from a failure to comply with the requirements of this contract' extends beyond Gilbert's obligations under general and law and incorporates contractual standards to which Gilbert obligated itself." *Gilbert*, 327 S.W.3d at 127.

[15] Gilbert argued that the contractual liability exclusion only applies when the insured assumed the liability of another, such an in a hold-harmless or indemnity agreement. The supreme court declined to read into the contractual liability exclusion the requirement that the insured must assume the liability "of another." *Gilbert*, 327 S.W.3d at 128–29. The court held the exclusion applies when an insured undertakes a liability independent of its noncontractual obligations. *Id*. at 132.

construction contract does not include any provision enlarging the contractor's obligations beyond performance of its construction work in a good and workmanlike manner, and accordingly there is not an assumption of liability for damages sufficient to trigger the contractual liability exclusion. *See Gilbert*, 327 S.W.3d at 134 (quoting *Cagle v. Commercial Standard Ins. Co.*, 427 S.W.2d 939, 943–44 (Tex. Civ. App.—Austin 1968, no writ)).

Exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured. *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008). An intent to exclude coverage must be expressed in clear and unambiguous language. *Id*. A reviewing court must interpret an exception to an exclusion of coverage broadly in favor of coverage. *See Gilbert*, 327 S.W.3d at 134. Here, the facts adjudicated in arbitration support the arbitrator's finding that McClure Brothers Custom Homes, LP breached the implied warranty of good workmanship that arises in the context of "general law." *Id*.[16] In this case, the express terms of the contract actually add nothing to the scope of the insured's liability for the foundation problems, and the contractual liability exclusion is not applicable. On this record, Mid-Continent failed to carry its burden of proving that the contractual liability exclusion applies to bar coverage for Castagna's damages under the arbitration award and in the final judgment. Consequently, the trial court did not err by denying Mid-Continent summary judgment that there was no coverage or duty to indemnify under the 2001 to 2002 or 2002 to 2003 Mid-Continent CGL policies at issue or by granting Castagna's motion for summary judgment.

---

[16] In *Ewing Construction Co., Inc. v. Amerisure Insurance Co.*, 690 F.3d 628, 633 (5th Cir. 2012), the following questions were certified to and are before the Texas Supreme Court in cause number 12-0661:

(1) Does a general contractor that enters a contract in which it agrees to perform its construction work in a good and workmanlike manner, without more specific provisions enlarging this obligation, "assume liability" for damages arising out of the contractor's defective work so as to trigger the Contractual Liability Exclusion.

(2) If the answer to question one is "Yes" and the contractual liability exclusion is triggered, do the allegations in the underlying lawsuit alleging that the contractor violated its common law duty to perform the contract in a careful, workmanlike, and non-negligent manner fall within the exception to the contractual liability exclusion for "liability" that would exist in the absence of contract.

**Conclusion**

The trial court did not err in granting Castagna's motion for summary judgment. The trial court erred in failing to grant Mid-Continent's motion for summary judgment on the ground that it does not owe a duty under the 2006 to 2007 policy to indemnify Castagna for the damages in the arbitration award.

Accordingly, we reverse the trial court's judgment in part and render judgment that Mid-Continent owes no duty to indemnify Castagna under CGL policy number 04-GL-00064560 for the effective period of August 5, 2006 to August 5, 2007. In all other respects, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

120383F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MID-CONTINENT CASUALTY
COMPANY, Appellant

No. 05-12-00383-CV     V.

VANESSA CASTAGNA, Appellee

On Appeal from the 101st Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. 2012-15701.
Opinion delivered by Justice Fillmore,
Justices O'Neill and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED IN PART** and **REVERSED IN PART**. We **REVERSE** the trial court's judgment that Mid-Continent Casualty Company owes a duty to indemnify appellee Vanessa Castagna for the arbitration award under commercial general liability policy number 04-GL-000641650 for the effective period of August 5, 2006 to August 5, 2007, and **RENDER** judgment that appellant Mid-Continent Casualty Company owes no duty to indemnify appellee Vanessa Castagna for the arbitration award under commercial general liability policy number 04-000641650 for the effective period of August 5, 2006 to August 5, 2007. In all other respects, we **AFFIRM** the trial court's judgment.

It is **ORDERED** that each party bear its own costs of this appeal. It is further **ORDERED** that appellee Vanessa Castagna recover the full amount of the trial court's judgment from appellant Mid-Continent Casualty Company and from Oklahoma Surety Company as surety on appellant's supersedeas bond.

Judgment entered this 20th day of August, 2013.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE