VINES–HERRIN CUSTOM HOMES, LLC, Herrin Custom Homes, and Emil G. Cerullo, Appellants,

v.

GREAT AMERICAN LLOYDS INSUR-ANCE COMPANY and Mid–Continent Casualty Company, Appellees.

No. 05–10–00007–CV.

Court of Appeals of Texas, Dallas.

Dec. 21, 2011.

Geoffrey Scott Harper, Victor C. Johnson and Taj J. Clayton, Fish & Richardson, P.C., Dallas, TX, for Appellant.

R. Brent Cooper, Diana L. Faust and Michelle E. Robberson, Cooper & Scully, P.C., Dallas, TX, for Appellee.

Before Justices FITZGERALD, FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice FRANCIS.

In this insurance coverage dispute, Vines–Herrin Custom Homes, LLC, Herrin Custom Homes, and Emil G. Cerullo appeal the trial court's take-nothing judgment in favor of Great American Lloyds Insurance Company and Mid–Continent Casualty Company. In two issues, appellants argue the trial court erred as a matter of law by requiring them to allege and then to prove, through expert testimony, the exact dates physical damage occurred to Cerullo's property in order to trigger the insurance companies' duties to defend and indemnify. We agree with appellants and reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

In 1999, Vines–Herrin built a single-family residence at 6617 Shady Creek in Plano. Before beginning construction, Vines–Herrin obtained commercial general liability (CGL) insurance coverage from Great American. The initial policy provided coverage from November 9, 1998 to November 9, 1999 and was renewed for a year, ending on November 9, 2000. After the Great American policies expired, Vines–Herrin purchased insurance coverage from Mid–Continent, a sister company of Great American. The first Mid–Continent policy covered the period from November 9, 2000 to November 9, 2001, and the second policy covered the period from September 18, 2001 to September 18, 2002.

Cerullo first saw the house while it was under construction but was told it was under contract to another buyer. About two months later, Vines–Herrin contacted Cerullo and told him the deal "fell through," and Cerullo agreed to buy the house if certain renovations were made. Ultimately, Vines–Herrin added a game room and bathroom, modified the garage and kitchen areas, and installed an 8,000–gallon fish tank. Cerullo bought the house in May 2000 for $989,353.

Within days of moving in, Cerullo began having problems with the house, including water intrusion and doors not shutting properly after a rainstorm. Over the next few months, Cerullo noticed water gathering on window sills and damage to the sheetrock and baseboards. Additionally, cracks developed in the ceiling. Around Thanksgiving Day 2000, Cerullo discovered a window in the back of the master bathroom had begun to sink into the frame of the house. In 2001, more cracks and leaks developed, and in early 2002, the ceiling and roof began to sag.

Cerullo informed Vines–Herrin of the ongoing problems with the house. When repairs were not made, in January 2003 Cerullo sued Vines–Herrin and others in state district court in Collin County to recover for the damage to his property resulting from negligent construction.

Vines–Herrin filed a claim with appellees seeking a defense and indemnification under the insurance policies. Appellees refused to provide a defense, prompting Vines–Herrin to file this lawsuit seeking a declaration that the insuring contracts required appellees to provide a full defense and indemnification in Cerullo's lawsuit. Additionally, Vines–Herrin brought claims for breach of the duty of good faith and fair dealing, breach of contract, and DTPA and insurance code violations.

As the Collin County litigation proceeded over the next few years, Vines–Herrin made additional requests to appellees for a defense against Cerullo's lawsuit, which appellees rejected. In May 2006, Vines–Herrin notified appellees that it had run out of defense funds and had agreed to arbitrate the dispute with Cerullo. The arbitration petition dropped all allegations except negligence, and a copy was sent to appellees, who refused to participate or attend the arbitration. The parties jointly selected an arbitrator who, after hearing the evidence, awarded Cerullo damages in the amount of $2,487,507.77. Cerullo and Vines–Herrin executed a settlement agreement in which, among other things, Cerullo became the rightful owner of all remaining claims, rights, and causes of action against appellees.

■ Cerullo then filed a petition in intervention in this coverage lawsuit. In May 2008, the case was tried to the court without a jury utilizing the "manifestation rule," which was the controlling law at the time and imposed a duty to defend only if the property damage manifested or became apparent during the policy period. After hearing the evidence, the trial court originally ruled in Cerullo's favor. However, during the pendency of post-judgment motions, the Texas Supreme Court issued an opinion rejecting the manifestation rule and adopting an "actual injury" approach. See *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24–25 (2008). Under the "actual injury" approach, property damage "occurs" when actual physical damage takes place rather than when the damage manifests itself or becomes discoverable. *Id.* at 24. Because of the change in the law, the trial court set aside its judgment and reopened the evidence under Texas Rule of Civil Procedure 270 for the limited purpose of hearing evidence of when actual damage to the residence occurred. After hearing this additional evidence, the trial court rendered a take-nothing judgment in appellees' favor based on the post-*Don's Building* actual-injury standard.

In its judgment, the trial court stated its "concern" that appellants had failed to "provide expert testimony regarding the exact date on which the damages to Mr. Cerullo's home occurred." In its amended findings of fact and conclusions of law, the trial court found that although appellants "have established that (1) the Residence was covered by an uninterrupted period of insurance (which began before the Residence was constructed) and (2) that the damages to the Residence manifested during the uninterrupted period of insurance coverage, [appellants] failed to show, by expert testimony, the date when actual physical damage to the property occurred. Therefore, judgment for the Insurance Companies is required." Additionally, citing to *Don's Building*, the court concluded "Mr. Cerullo failed to allege the date when actual physical damage to the property occurred; therefore, it now seems [appellees] had no duty to defend Vines–Herrin against Mr. Cerullo's claim."

Appellants filed this appeal, challenging in two issues the trial court's reading of *Don's Building* to require a party to allege an exact date that physical damage occurred and to require expert testimony to

prove an actual date of injury in this case. Appellees have brought conditional cross-issues, which they say provide alternative grounds to affirm the judgment. Because it involves jurisdiction, we begin by addressing appellees' first cross-issue.

■ Appellees assert the trial court rendered a final judgment in this case in October 2004; therefore, all subsequent proceedings, including the trial of the case, were void for lack of jurisdiction.

The record shows that on October 28, 2004, the former presiding judge signed a document entitled "Final Judgment" in which the court considered the "Defendants' Cross–Motion for Summary Judgment." The judge granted the motion and ordered, adjudged, and decreed that Great American and Mid–Continent had no duty to defend and/or indemnify Vines–Herrin or Herrin Custom Homes. The judgment awarded costs against the plaintiffs and stated the following: "This is a final judgment and all other relief not specifically granted herein is denied."

In their brief, appellees acknowledge that (1) at the time of the judgment, there was another defendant in the case;[1] (2) all claims were not adjudicated in the judgment; and (3) none of the parties treated the judgment as final. Nevertheless, they argue the judgment is final because it resolves the only issues in the case at the time (whether they owed a duty to defend and indemnify), grants the relief requested in their cross-motion for summary judgment, expressly states it is a "final judgment" and includes Mother Hubbard language, and taxes costs against the plaintiffs.

■ Absent a conventional trial on the merits, an order or judgment is not final for purposes of an appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex.2001). An order that disposes of claims against one of multiple defendants does not adjudicate claims by or against other parties. *Id.* An order does not dispose of all claims and all parties merely because it is entitled "final," or because the word "final" appears elsewhere in the order, or even because it awards costs. *Id.* "Language that the plaintiff take nothing by his claims in the case, or that the case is dismissed, shows finality if there are no other claims by other parties; but language that 'plaintiff take nothing by his claims against X' when there is more than one defendant or other parties in the case does not indicate finality." *Id.*

Here, we have no clear indication the trial court intended to completely dispose of the case. The record shows that at the time of the trial court's order, there was another defendant, Hotchkiss, other than appellees. The trial court disposed only of appellees' cross motion for summary judgment related to the duty to defend and indemnify. Contrary to appellees' assertion otherwise, the judgment did not resolve the only issues in the case at the time because the petition also contained allegations that defendants misrepresented a material fact or policy revision relating to the coverage at issue and the judgment did not dispose of the other defendant. Because the judgment did not clearly dispose of all parties and all issues, it was interlocutory. We therefore overrule ap-

---

1. Actually, appellees assert that at the time of the 2004 judgment, there were two other defendants in the case, Hotchkiss Insurance Agency and insurance agent Ronny Robinson. However, the record shows that Robinson was not added as a defendant until the third amended petition, which was filed in July 2005.

pellees' first cross-issue. Having decided the jurisdiction argument against appellees, we now turn to the merits of appellants' issues. The parties here agree the relevant policy provisions are identical to those considered by the court in *Don's Building*. Because both issues are governed by the holding in that case, we begin our discussion there.

In *Don's Building*, homeowners sued the seller/distributor of a synthetic stucco product alleging the stucco was defective and allowed moisture to seep into the wall cavities behind the siding, causing internal wood rot that progressed unnoticed because of the siding's undamaged exterior. *Don's Bldg.*, 267 S.W.3d at 22. The seller/distributor's CGL insurer sought a declaratory judgment that it had no duty to defend and indemnify because the damage was not discovered until after the policy period had ended.

The Fifth Circuit certified two questions to the Texas Supreme Court regarding when coverage is triggered under an occurrence-based CGL insurance policy like the ones at issue here. *See id.*, 267 S.W.3d at 22. In response, the supreme court, focusing on the plain language of the policy, adopted the actual-injury rule, holding that property damage occurs during the policy period if "actual physical damage to the property occurred" during the policy period. *Id.* at 24. The court explained that "the key date is when injury happens, not when someone happens upon it" and that the focus should be on "when damage comes to pass, not when damage comes to light." *Id.* at 22. "The policy asks when the damage happened, not whether it was manifest, patent, visible, apparent, obvious, perceptible, discovered, discoverable, capable of detection, or anything similar. Occurred means when *damage* occurred, not when *discovery* occurred." *Id.* at 30. The court then concluded that property damage "occurred when the home in question suffered wood rot or some other form of physical damage." *Id.*

In the case before us, the trial court's judgment incorporated certain prior fact findings, including that "[t]here was an uninterrupted period of insurance coverage in this case starting on November 9, 1998 (*a date before Mr. Cerullo's house was constructed*) and ending on September 18, 2002" and "[appellants] suffered a continuing series of injuries and damages throughout several policy periods." Additionally, the judgment noted that expert reports offered at trial and not contradicted or controverted by appellees established, by a preponderance of the evidence, that the cause of damages to Cerullo's house was defective framing and Cerullo suffered damages as a result. The judgment further noted the court's "concern" that appellants failed "to provide expert testimony regarding the exact date on which the damages to Mr. Cerullo's home occurred." The judgment set out that evidence at the initial trial was "uncertain as to what date the damages occurred (*when the house was designed or sometime after the framing was constructed*)" and therefore the trial court reopened the evidence "for this limited purpose under the new guidelines set out by the Texas Supreme Court." Finally, the judgment noted that appellees had argued the court "should require [appellants] to identify what was the date of actual injury and which of the policies is triggered." The trial court agreed and determined that "although the Court believes that [appellants] have established, by a preponderance of the evidence, that the damages to Mr. Cerullo's home are covered by insurance and occurred within the periods of insurance coverage, [appellants] have again failed to show the date of the actual injury and therefore judgment for [appellees] is required."

In amended findings of fact and conclusions of law, the trial court reiterated some of the findings incorporated in its judgment. Additionally, the trial court found that "although [appellants] have established that (1) the Residence was covered by an uninterrupted period of insurance (which began before the Residence was constructed) and (2) that the damages to the Residence manifested during the uninterrupted period of insurance coverage, [appellants] failed to show, by expert testimony, the date when actual physical damage to the property occurred." The trial court then concluded that judgment for appellees was "required."

From the trial court's judgment and amended findings and conclusions, it is clear the trial court interpreted *Don's Building* to require (1) an exact date of actual injury and (2) expert testimony establishing that date. The supreme court in *Don's Building* held only that property damage under the CGL policy "occurred when actual physical damage to the property occurred." *Id.* at 24. Quoting the definition of property damage in the policy, the court then explained that in the case before it, the damage occurred when a home suffered wood rot or other property damage. So long as that damage occurred within the policy period, coverage was provided. *See id.*

■ With that in mind, we consider the duty to defend and the duty to indemnify under the applicable law. The duties to defend and indemnify are typically separate and distinct obligations. *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex. 2002). The insurer's duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy. *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.,* 146 S.W.3d 833, 838 (Tex.App.-Dallas 2004, pet. denied). The duty to defend protects the insured by requiring a legal defense to allegations without regard to whether they are true, but it does not extend to allegations, true or false, that have not been made. *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.,* 279 S.W.3d 650, 656 (Tex.2009).

■ The duty to defend is determined under the "eight-corners rule," where only the pleadings and policy language are considered. *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 334 S.W.3d 217, 219 (Tex.2011). When applying the "eight-corners rule," we give the allegations in the petition a liberal interpretation, and any doubts regarding whether the allegations trigger a defense by the insurer are resolved in the insured's favor. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex. 1997); *King,* 85 S.W.3d at 187. The court may not, however, read facts into the pleadings, look outside the pleadings, or "imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co.,* 939 S.W.2d at 142.

■ The insurer's duty to indemnify, on the other hand, is triggered not by allegations in the pleadings but by whether a plaintiff ultimately prevails on a claim covered by the policy. *Don's Bldg.,* 267 S.W.3d at 31. The duty to indemnify is "determined based on the facts actually established in the underlying suit." *Burlington N.,* 334 S.W.3d at 219.

■ Beginning with the duty to defend, we must determine whether Cerullo's petitions potentially state a claim within the scope of the policies. First, there is no dispute among the parties that the petitions in the underlying suit allege negligent construction defect claims. The only question is whether the pleadings potentially allege property damage that actually

occurred within the policy period. In his amended and arbitration petitions, Cerullo alleged the house was constructed in 1999 and he purchased it in May 2000. The petitions further alleged that "[b]y April of 2001, Cerullo noticed that the windowsills in the study were showing signs of leakage and water damage.... The sill in the study was subsequently repaired and re-painted by Vines–Herrin. However, by the spring of 2002, Cerullo noticed the sill in the study was again damaged, as were the sills at numerous other windows throughout the Residence." The petitions then alleged a litany of defects in the Residence.

We conclude these allegations were sufficient to trigger appellees' duty to defend. The Great American policies provided continuous coverage from November 9, 1998 to November 9, 2000 and the Mid–Continent policies provided coverage from November 9, 2000 to September 18, 2002. The pleadings allege the house was built in 1999 and, by April 2001, was showing signs of damage. Applying the eight-corners rule, the pleadings sufficiently allege the policies were in effect prior to construction and actual damage occurred sometime during or after construction during the policy periods. Thus, at a minimum, the petitions adequately plead that actual physical damage to the property potentially occurred during appellees' policy periods. We sustain the first issue.

With respect to the duty to indemnify, we focus on a particular finding of fact made by the trial court:

In May 2000, shortly after purchasing the home, there was substantial flooding from a rainstorm that caused damage to the Resident [sic], including water leaks.

This property damage manifested during the coverage period of Great American Policy No. PAC 9–86–51–21–04, which was in effect from November 9, 1999 through November 9, 2000.

■■■ The trial court found the damages manifested during the Great American policy period. As a matter of law, actual damages must occur no later than when they manifest; in other words, by the time damages manifest, they necessarily have occurred. Here, the trial court found the cause of damages to Cerullo's home was defective framing. The framing of the house had to occur after construction began, and the undisputed evidence showed and the trial court found that Great American provided coverage from a date before Cerullo's house was constructed. Specifically, the undisputed evidence showed Great American provided continuous coverage in two, sequentially numbered, one-year policies that ran from November 9, 1998 to November 9, 2000, and appellees do not argue there is any material difference between the two policies. Given the undisputed evidence that Great American provided coverage even before the house was constructed and that the damage manifested in May 2000, actual damages must have occurred during the coverage provided by Great American. Thus, contrary to the trial court's determination otherwise, the evidence showed Great American's duty to indemnify was triggered, and expert testimony establishing the exact date of injury was not required to trigger the duty.[2] We therefore sustain the second issue.

Appellees raise seven cross-issues as alternative bases for affirming the trial court's judgment. Specifically, they argue

---

2. We expressly do not address the doctrine of "continuing injury," see Don's Bldg., 267 S.W.3d at 32 n. 45, or whether Mid–Continent's policies have been implicated and instead leave those issues for consideration by the trial court on remand in light of our holding and analysis.

(1) the fortuity doctrine precluded coverage; (2) the arbitration award is neither a "legal obligation to pay" nor an agreed settlement or final judgment; (3) the arbitration award was not the result of a fully adversarial trial or an "actual trial"; (4) Cerullo failed to allocate damages between covered and non-covered claims, precluding any duty to indemnify; (5) the *Stowers* demand was not valid; and (6) the arbitration was not a "suit" for which the insurers owed a duty to defend. The trial court did not rely on any of these grounds for its take-nothing judgment; consequently, we do not address them. *See Patterson v. Planned Parenthood of Houston,* 971 S.W.2d 439, 443 (Tex.1998) ("The courts of this state are not empowered to give advisory opinions.").[3]

We reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

**3.** Appellees requested the trial court to make findings of fact and conclusions of law on these issues, but, in its amended findings of fact and conclusions of law, the trial court did not do so.