**REVERSE and REMAND; and Opinion Filed August 25, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00230-CV

### GREAT AMERICAN LLOYDS INSURANCE COMPANY AND MID-CONTINENT CASUALTY COMPANY, Appellants
### V.

### VINES-HERRIN CUSTOM HOMES, L.L.C., HERRIN-CUSTOM HOMES, INC. AND EMIL G. CERULLO, Appellees

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-03-6903**

## MEMORANDUM OPINION
Before Justices Lang, Brown, and Whitehill
Opinion by Justice Brown

This is the second appeal in this insurance coverage dispute which involves the standard form Commercial General Liability ("CGL") Insurance Policy. In the first appeal, appellees Vines-Herrin Custom Homes, L.L.C., Herrin-Custom Homes, Inc., and Emil G. Cerullo (collectively "Vines-Herrin") appealed the trial court's judgment in favor of Great American Lloyds Insurance Company ("Great American") and Mid-Continent Casualty Company ("Mid-Continent") (collectively "the Insurers"). In that appeal, Vines-Herrin asserted the trial court erred in concluding the Insurers did not owe Vines-Herrin a duty to defend a construction defect suit brought by Cerullo or a duty to indemnify Vines-Herrin for an arbitration award Cerullo obtained in connection with that suit. We agreed with Vines-Herrin and concluded both Insurers

owed Vines-Herrin a duty to defend and that Great American's duty to indemnify, at least, was also triggered. As a consequence, we remanded to the trial court for further proceedings. On remand, the trial court rendered judgment that Vines-Herrin recover from the Insurers, jointly and severally, the expenses it incurred in defending Cerullo's suit, the full amount of the arbitration award, and its attorney's fees it incurred prosecuting the coverage suit.

In four issues, the Insurers generally assert (1) the evidence is legally and factually insufficient to show they had a duty to indemnify Vines-Herrin, (2) the trial court erred in rendering judgment over the policy limits, (3) the evidence is legally and factually insufficient to support the trial court's award of attorney's fees, and (4) the trial court erred in finding the Insurers jointly and severally liable. For the following reasons, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## I. Background

Under the standard terms of an occurrence-based CGL, like those at issue here, the insurer agrees to defend the insured from suits alleging property damages caused by an occurrence if the damages occurred during the policy period. The insurer also agrees to pay those sums the insured becomes legally obligated to pay because of property damages that occurred during the policy period.

Between 1998 and 2002, Vines-Herrin, a residential builder, purchased four consecutive CGL policies from the Insurers, each providing coverage for a period of one year. Great American issued the first two policies, which together covered Vines-Herrin from November 9, 1998 to November 9, 2000. Mid-Continent issued the second two policies, which overlapped briefly, but covered Vines-Herrin from November 9, 2000 through September 18, 2002.

In 1998 or 1999, during Great American's policy periods, Vines-Herrin built a residence in Plano, Texas. In May 2000, Vines-Herrin sold that residence to Emil Cerullo. Cerullo began

noticing problems with the house almost immediately. The problems included water not draining from the courtyard, doors not closing properly, damages to sheetrock and baseboards, cracks in the ceiling, a window sinking into the frame, and finally, in 2002, the roof and the ceiling began to sag.

In January 2003, Cerullo sued Vines-Herrin alleging various construction defects caused him damages. Vines-Herrin demanded the Insurers provide it a defense under the terms of the CGLs. They both denied there was any coverage and refused to defend Vines-Herrin. Vines-Herrin then brought this suit seeking a declaration that the Insurers owed it a duty to defend and a duty to indemnify.

Meanwhile, Cerullo's suit proceeded. During the pendency of that action, Vines-Herrin reiterated its request that the Insurers provide it a defense, to no avail. Then, in 2006, in order to avoid a costly jury trial, Vines-Herrin and Cerullo agreed to arbitrate the dispute. Before doing so, Vines-Herrin attempted to obtain the Insurers' input. They both refused to take any position, again denying their respective CGLs provided any coverage. Vines-Herrin nevertheless notified the Insurers of the arbitration hearing and invited them to attend, but they declined.

Following an evidentiary hearing, the arbitrator found in favor of Cerullo and awarded him $2,487.507.77 in damages. After the arbitrator entered its award, Cerullo and Vines-Herrin entered into a settlement agreement in which Cerullo agreed not to confirm the arbitration award in exchange for an assignment of Vines-Herrin's claims against the Insurers. Cerullo then intervened in this suit.

At a bench trial on coverage, arbitrator Russell Bowman testified that the arbitration hearing was adversarial and was based on Cerullo's allegations that the house contained various construction defects that required numerous repairs. Bowman testified that Cerullo's major complaints concerned the roof structure, which was collapsing, moisture entering the house due

to stucco not being properly installed, windows not being properly installed, and foundation problems.

Cerullo testified he moved into the house in May 2000 and, within a week, noticed problems with the house. For example, water would not drain from the courtyard area and doors would not shut properly. Cerullo testified that around Thanksgiving 2000, he noticed windows in the master bathroom area looked like they were sinking. He also testified it appeared the master bathroom area was sinking into the stucco. In 2001, cracking occurred in other rooms.

After the testimony closed, the trial court rendered judgment in favor of Vines-Herrin. However, while the post-judgment motions were pending, the Texas Supreme Court decided *Don's Building Supply Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20 (Tex. 2008). In *Don's Building*, the supreme court adopted the "actual injury rule" for determining when property damages occur under the CGL's policy period. Because the trial court concluded that Vines-Herrin's evidence was insufficient based on its understanding of the actual injury rule, the trial court set aside its judgment. However, the trial court allowed Vines-Herrin to reopen the evidence to show when Cerullo's property damages occurred.

At that time, Cerullo provided further testimony to show when the complained-of damages had occurred. For example, he testified to the dates he first noticed the flooding, cracks, and structural failures he claimed were caused by Vines-Herrin's negligence. Cerullo also testified he was living in the house at the time and therefore knew that the damages occurred on or about the dates he first noticed them.

The trial court nevertheless rendered judgment that Vines-Herrin take-nothing, interpreting *Don's Building* as requiring expert testimony on causation and evidence of the exact date property was physically injured. The trial court also concluded that the Insurers did not owe

Vines-Herrin a duty to defend because Cerullo's petition failed to allege the exact dates of a physical injury.

Vines-Herrin appealed and this Court reversed. *Vines–Herrin Custom Homes, LLC v. Great Amer. Lloyds Ins. Co.*, 357 S.W.3d 166, 174 (Tex. App.—Dallas 2011, pet. ref'd) ("*Vines-Herrin I*"). In that appeal, we first concluded that both Great American and Mid-Continent owed Vines-Herrin a duty to defend because Cerullo's petition alleged property damages that potentially occurred during both Great American's and Mid-Continent's policy periods. *Id.* at 173. We also rejected the trial court's conclusion that, in order to trigger the duty to indemnify, Vines-Herrin was required to show the exact date of physical injury. *Id.* Instead, Vines-Herrin was required to show only that damages occurred during the Insurer's policy period or periods. *See id.* We concluded the evidence showed that Great American's duty to indemnify was triggered because it issued policies that provided coverage to Vines-Herrin from the time before the house was even built until the date Cerullo first noticed the damages. *Id.* As a consequence, property damages necessarily occurred during one of Great American's policy periods. *Id.* We reversed the trial court's judgment and remanded to the trial court for further proceedings.

On remand, the trial court reversed course entirely and entered judgment in favor of Vines-Herrin against both Great American and Mid-Continent, jointly and severally, for the entire arbitration award. In its findings of fact and conclusions of law, the trial court found the arbitrator's award represented actual damages Cerullo suffered as a result of Vines-Herrin's negligent construction of the residence. The trial court also found that Cerullo had "noticed" property damages during three policy periods at issue, the second Great American policy and both of Mid-Continent's policies. The trial court identified those damages as (1) flooding in the courtyard after a rainstorm, (2) windows bowing around the pool area, and (3) ceilings and the roof starting to sag. The trial court concluded each damaging event constituted an occurrence

–5–

during one of the policies at issue and triggered the limits of that policy. The trial court found that Vines-Herrin was not required to allocate the damages that occurred during the respective policy periods because all of the damages were covered under one of the policies. The Insurers requested the trial court to make additional findings of fact "and/or" conclusions of law with respect to the specific dates property damages had occurred and the specific amount of money the arbitrator awarded for specific property damages. The trial court refused. The Insurers brought this appeal.

## II. Duty to Indemnify

In their first issue, the Insurers assert the evidence is legally and factually insufficient to show either one of them of them owed Vines-Herrin a duty to indemnify or that they breached their duty. Specifically, they assert the evidence is legally insufficient because (1) Vines-Herrin failed to show property damages occurred during a specific policy period, (2) Vines-Herrin failed to segregate the arbitration award and allocate the damages awarded to a particular policy period, (3) Vines-Herrin never became "legally obligated" to pay the arbitration award because it was never confirmed to judgment, and (4) the arbitration award was not the product of a "fully adversarial trial."

## A. Standard of Review

In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence to support them as we would review a jury's findings. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). It is presumed that all fact findings needed to support the judgment were made by the trial court. *See Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 276 (Tex. 1979). When the trial court's express findings of fact do not address all grounds for recovery or defenses, an appellate court implies findings of fact regarding the

–6–

omitted grounds or defenses that are needed to support the judgment. *Pulley v. Milberger*, 198 S.W.3d 418, 427 (Tex. App.—Dallas 2006, pet. denied). However, if a party requests the trial court to make additional fact findings, and the trial court refuses, we may not presume the trial court made the refused findings. *Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738, 742–43 (Tex. App.—Dallas 1990, writ dism'd). However, a trial court is not required to make findings on undisputed facts or on issues that are evidentiary or incidental. *Guar. Bond State Bank v. Tucker*, 462 S.W.2d 398, 404–05 (Tex. Civ. App.—Dallas 1970, writ ref'd n.r.e.). An evidentiary issue is one the trial court may consider in deciding the controlling issue, but it is not a controlling issue itself. *Id.*

In reviewing the legal sufficiency of the evidence to support a trial court's finding of fact, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must assume the trial court made all reasonable inferences in favor of its findings. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 621 (Tex. 2014). In a factual sufficiency review, we examine all the evidence in the record, both supporting and contrary to the trial court's finding, and reverse only if the evidence supporting the finding is so weak or the finding is so against the great weight of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curium); *In re Marriage of C.A.S. and D.P.S.*, 405 S.W.3d 373, 382–83 (Tex. App.—Dallas 2013, no pet.).

We independently evaluate the trial court's conclusions of law to determine whether the trial court correctly drew the legal conclusions from the facts. *Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 430 (Tex. 2011). We must uphold the trial court's conclusions of law if any legal theory supported by the evidence sustains the judgment. *Inwood*

*Nat'l Bank v. Wells Fargo Bank, N.A.*, 463 S.W.3d 228, 234–35 (Tex. App.—Dallas 2015, no pet.).

## B. Applicable Law

Under the CGL policies at issue here, the Insurers had two responsibilities relating to coverage, the duty to defend and the duty to indemnify. *See D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009). An insurer's duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy. *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 838 (Tex. App.—Dallas 2004, pet. denied).

The duty to indemnify means the insurer will pay all covered claims and judgments against an insured. *Mid-Continent Cas. Co. v. Castagna*, 410 S.W.3d 445, 449–50 (Tex. App.—Dallas 2013, pet. denied). The Insurer's duty to indemnify is triggered not by allegations in the pleadings but by whether a plaintiff ultimately prevails on a claim covered by the policy. *Vines–Herrin Custom Homes,* 357 S.W.3d at 172. The duty to indemnify is "determined based on the facts actually established in the underlying suit." *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 334 S.W.3d 217, 219 (Tex. 2011). The actual facts can be established in an arbitration proceeding. *Castagna*, 410 S.W.3d at 452.

## C. The CGL & the "Actual Injury" Rule

Under the CGL, the insurer agrees to pay those sums the insured becomes legally obligated to pay "because of" property damage to which the insurance applies. The insurance applies to property damages only if (1) the property damages are caused by an occurrence and (2) the property damages occur during the policy period. An "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Property damage" means "physical injury to tangible property, including all resulting loss of use of that property.

In *Don's Building*, the supreme court adopted what is known as the "actual injury" approach in determining when property damages occur during the CGL's policy period. In that case, the insured was sued by homeowners for wood rot damages that were caused by exposure to moisture. S*ee Don's Bldg*., 267 S.W.3d at 22-23. The insurer brought a declaratory judgment action seeking a ruling that it had no duty to defend or indemnify under the CGL policies that covered the insured during a three-year period during which the homeowners' residences were initially exposed to the moisture that caused wood rot and other damages. *Id*. at 23. However, the homeowners did not discover the damages for several years, well after the policy periods of the applicable CGLs. *See id*. at 22-23. On certified question from the Fifth Circuit, the Texas Supreme Court was asked to resolve a split of authority amongst the courts of appeals regarding when property damages occur under the CGL and specifically if property damages occur when property is exposed to a harmful condition or if they occur when the damages manifest. *Id.* at 23.

The supreme court responded that neither was the appropriate inquiry. Instead, relying on the CGL's definition of property damages as "physical injury" to property, the supreme court held property damages occur at the time property suffers actual physically injury, not when property is exposed to conditions that later cause physical injury or when property damages become manifest. *Id.* at 23, 29.

### D. Application

### i. Property Damage During Policy Period

In this case, the Insurers do not challenge whether Vines-Herrin showed the property damages were caused by an "occurrence." Instead, their complaints are directed entirely to

whether Vines-Herrin showed property damages occurred during the applicable policy periods. However, as noted above, in *Vines-Herrin I*, this Court held Great American's duty to indemnify was triggered. As a consequence, we reversed the trial court's judgment that Vines-Herrin take nothing on its indemnity claim. The Insurers filed a petition for discretionary review to the supreme court, which was denied. The Insurers now ask that we render the same judgment we reversed in *Vines-Herrin I*, with respect to both Great American and Mid-Continent, because neither of their duties to indemnify were triggered.

Under the "law of the case" doctrine, questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *In re Assurances Generales Banque Nationale*, 334 S.W.3d 323, 325 (Tex. App.–Dallas 2010, no pet.). The doctrine applies when the issues of law and fact are substantially the same in the second proceeding as the first. *Siemens AG v. Houston Cas. Co.*, 127 S.W.3d 436, 442 (Tex. App.–Dallas 2004, pet. dism'd). In such cases, we will not again pass upon matters that were decided on in a prior appeal. *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 362 (Tex. App.–Dallas 2004, pet. denied).

The Insurers now assert that, on remand, the trial court should have rendered judgment that Vines-Herrin take nothing because it failed to show either Great American or Mid-Continent's duty to indemnify was triggered. In an apparent effort to avoid our prior ruling as to Great American, the Insurers assert the trial court did not make a finding of fact we specifically relied on in reaching our conclusion in *Vines-Herrin I*. In its findings of fact in *Vines-Herrin I*, the trial court found the property damages stemmed "at least in part" from defective framing. In its written judgment, the trial court also noted that Vines-Herrin had presented evidence of expert reports showing the damages were caused by defective framing. Regardless, in *Vines-Herrin I*, we referenced the trial court's finding regarding the cause of the damages only to explain that

–10–

property damages had to have occurred during the Great American's policy period because the house was both framed and suffered property damages during Great American's policy periods.

After the case was remanded and trial court rendered judgment in favor of Vines-Herrin, the trial court found the arbitration award was for damages caused by negligent construction generally, but did not specifically find the damages were caused by defective framing. Regardless, the legal and factual import of that finding is no different than the finding we referenced in *Vines-Herrin I*.[1]  In other words, Great American provided coverage to Vines-Herring during the entire period the house was constructed until the time damages first manifested.  As consequence, "actual damages must have occurred during the coverage provided by Great American." *Id*. at 173.  Therefore, as this Court has already held, Great American owed Vines-Herrin a duty to indemnify.  We will not revisit that holding here.  *Siemens AG v. Houston Cas. Co*., 127 S.W.3d 436, 442 (Tex. App.–Dallas 2004, pet. dism'd).

We now turn to whether Vines-Herrin presented sufficient evidence to show Mid-Continent's duty to indemnify was triggered.  Under the CGL, Mid-Continent agreed to pay those sums Vines-Herrin became legally obligated to pay because of property damage caused by an occurrence, if the property damage occurred during its policy periods.   In its findings of fact and conclusions of law, the trial court found that Cerullo noticed property damages during both of Mid-Continent's policy periods and also that the property damages occurred during those policy periods.  The trial court specifically referenced Cerullo's testimony regarding when he noticed his windows in the pool area starting to bow and his ceiling and roof starting to sag. According to the Insurers, the trial court's findings reflect it applied the wrong legal standard in

---

[1] In any event, assuming that finding was necessary to support the trial court's judgment, we must presume the trial court made it.  *See Pulley v. Milberge*r, 198 S.W.3d 418, 427 (Tex. App.—Dallas 2006, pet. denied).

–11–

determining when property damages occur under the CGL and specifically that trial court applied the defunct "manifestation rule" rather than the "actual injury rule."

Initially, we disagree with the Insurers that the trial court's findings of fact, with respect to when Cerullo noticed visible property damages, shows the trial court disregarded *Don's Building* and applied the "manifestation rule" rather than the "actual injury rule." In fact, in *Don's Building*, the supreme court expressly recognized that when damages are not latent (i.e. are visible) the actual injury rule and the manifestation rule are, for all practical purposes, the same.[2] *See Don's Bldg.*, 267 S.W.3d at 26 (actual injury rule and manifestation rules "diverge" when damages are latent). We further conclude the evidence is legally sufficient to support the trial court's findings that property damages occurred during Mid-Continent's policy periods. At trial, Cerullo testified he noticed cracks in ceilings, his windows begin to bow, and his ceilings beginning to sag during Mid-Continent's policy periods. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 10 (Tex. 2007) (cracks in sheetrock and stone veneer constitute "physical injury" to "tangible property"). Cerullo also testified he was living in the house at the time of the property damages and therefore knew they occurred at about the same time he noticed them. Viewing that evidence in the light most favorable to the trial court's findings, as we must, we conclude there is more than a scintilla of evidence from which the trial court could have rationally found property damages occurred during Mid-Continent's policy periods. Therefore, the evidence is legally sufficient to show Mid-Continent's duty to indemnify was triggered.

The Insurers also generally assert the evidence is factually insufficient to show property damages occurred during the Insurers' policy periods. The Insurers presented no evidence that

---

[2] The property damages at issue in *Don's Building* were hidden during the entire policy period. They did not manifest until several years later.

the damages did *not* occur within either Mid-Continent's or Great American's policy periods.[3] Thus, the trial court's findings are not against the great weight and preponderance of the evidence. We also conclude the evidence is not so weak that the trial court's findings are clearly wrong and unjust.

### ii. Allocation of Arbitrator's Award

Finally, the Insurers assert the evidence is legally and factually insufficient to support the trial court's judgment because Vines-Herrin presented no evidence allocating the damages the arbitrator awarded to the specific policy period in which they occurred. According to the Insurers, Vines-Herrin's failure to do so entitles them to rendition of a take-nothing judgment.

To show allocation was required, the Insurers rely on the plain terms of the CGL, which provides coverage *only* for property damages that occur "during the policy period." At the same time, for purposes of this issue, the Insurers do not dispute property damages occurred during policy periods they covered Vines-Herrin. However, they assert that, even if the evidence shows they should have indemnified Vines-Herrin in some amount, Vines-Herrin's failure to present evidence showing what that amount was is fatal it its recovery. Vines-Herrin, on the other hand, contends the evidence is both legally and factually sufficient to support the trial court's judgment that the Insurer's each had the duty to indemnify Vines-Herrin for the entire arbitration award. We disagree with both the Insurers and Vines-Herrin.

When "covered and non-covered perils *combine* to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril(s)." *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971). In such cases, to show the insurer should have provided coverage in *any* amount, evidence is necessary to show damages were caused by

---

[3] In that regard, we note that it appears to have been the Insurers' strategy not to present any evidence that the property damages did not occur during their respective policy periods. Had they done so, they would have provided evidence that the damages occurred during the other's policy periods.

solely by the covered peril. *See id.* According to the Insurers, the same principle applies here and required Vines-Herrin to apportion the arbitration award in order to show coverage. We have previously held those principles do not apply when multiple insures have been shown to have liability for a loss. *See Castagna*, 410 S.W.3d at 454. We relied on the principle that:

> If a single occurrence triggers more than one policy, covering different policy periods, then different limits may have applied at different times. In such a case, the insured's indemnity limit should be whatever limit applied at the single point in time during the coverage periods of the triggered policies when the insured's limit was highest. The insured is generally in the best position to identify the policy or policies that would maximize coverage. Once the applicable limit is identified, all insurers whose policies are triggered must allocate funding of the indemnity limit among themselves according to their subrogation rights.

*Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 855 (Tex. 1994).

As noted above, Vines-Herrin showed both Insurers' duty to indemnify was triggered. As a consequence, it met its burden to prove coverage. The Insurers complaints regarding Vines-Herrin's failure to segregate implicates damages, not coverage. An unsegregated damages award is some evidence of damages. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006).

However, we agree with the Insurers that the trial court's findings do not support a judgment against both Great American and Mid-Continent, jointly and severally, for the entire arbitration award. The trial court's judgment reflects that it did not base its judgment on a finding of a single occurrence that caused damages to property over multiple policy periods. Rather, it found separate occurrences, each of which caused damages in a single policy period. We agree with the Insurers that they were not required to indemnify Vines-Herrin for property damages caused by occurrences and damages, both of which occurred outside their respective policy periods. Therefore, we again reverse the trial court's judgment and remand to the trial

–14–

court to determine the amount of indemnification. Because our disposition of this issue requires us to remand to the trial court to determine the proper amount of indemnification, we need only consider the Insurers' remaining points that would entitle them to a rendition of judgment.

### iii. Legal Obligation to Pay

The Insurers assert they are entitled to rendition of a take-nothing judgment because an arbitration award does not constitute a legal obligation to pay damages. The insurers were obligated to pay sums Vines Herrin became "legally obligated to pay" as damages because of property damages caused by an occurrence.

As noted, after Cerullo sued Vines-Herrin, they agreed to arbitrate the dispute, the result of which was an arbitration award in favor of Cerullo. After the award was entered, the parties entered into a settlement agreement, by which Cerullo agreed not to confirm the arbitration award and Vines-Herrin assigned Cerullo its claims against the Insurers. According to the Insurers, because the arbitration award was never confirmed, Vines-Herrin never became "legally obligated" to pay damages to Cerullo.

The term "legally obligated" is not defined in the policy. However, the term is not limited to obligations that are immediately enforceable and subject to execution as a judgment. It includes obligations established in a judgment, as well as obligations created by settlement agreements and statutes. *See Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 680 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Here, the Insurers do not dispute that Vines-Herrin and Cerullo engaged in binding arbitration. Nor do the Insurers contend Vines-Herrin had any grounds on which it could have vacated the arbitrator's award. We nevertheless note Vines-Herrin's attorney testified at trial that he did not believe Vines-Herrin had any such grounds. As a result, Vines-Herrin asked Cerullo if he would agree not to confirm the arbitration

–15–

award in exchange for Vines-Herrin's assignment of its claims against the Insurers. Cerullo agreed.

Because a trial court is required to confirm an award absent grounds for vacateur, we conclude an arbitration award constitutes a legal obligation to pay the award. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.087 (West 2011) (unless grounds are offered for vacating, modifying, or correcting an award court shall confirm the award); TEX. CIV. PRAC. & REM. CODE ANN. § 171.088 (West 2011) (grounds for vacating arbitration award). At a minimum, it can reasonably be construed as such. *JAW The Pointe, L.L.C. v. Lexington Ins. Co*., 460 S.W.3d 597, 603 (Tex. 2015) (when terms in an insurance policy are subject to more than one reasonable construction, we interpret the terms in favor of coverage).

### iv. Actual Trial Requirement

Finally, the Insurers assert we should render judgment against Vines-Herrin because the arbitration award was not entered after an "actual trial" or a fully "adversarial trial." They rely on *State Farm Fire & Cas. v. Gandy*, 925 S.W.2d 696, 700-01 (Tex. 1996), which concerns when certain assignments of causes of action are unenforceable for public policy reasons.

As this Court has previously held, the Insurers breached their duties to Vines-Herrin by refusing to defend Cerullo's suit. As a consequence, Vines-Herrin was forced to defend itself at its own expense. To avoid a costly trial, Vines-Herrin and Cerullo agreed to arbitrate. Before Vines-Herrin did so, it attempted to confer with the Insurers. The Insurers refused to provide any input, insisting there was no coverage. The Insurers now complain about how Vines-Herrin defended itself and its decision to arbitrate. The Insurers further claim the record shows the arbitration was less than "fully adversarial."

The trial court, however, found the arbitration proceeding was "fully adversarial." That finding is supported by the evidence, including both Cerullo's and the arbitrator's testimony.

–16–

The Insurers ignore that testimony and instead generally suggest Vines-Herrin's agreement to arbitrate was inherently suspect. However, Texas law both favors and encourages arbitration. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 512 (Tex. 2015). Moreover, it is well-settled that an insurance company may not insist on an actual trial requirement when it has breached its duty to defend its insured. *See Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 672 (Tex. 2008). Here, the Insurers had every opportunity to protect their interests by offering Vines-Herrin a defense, and indeed they had the duty to do so. Because they refused to provide a defense and denied all coverage, Vines-Herrin sought arbitration to reduce its litigation costs and, after it obtained an unfavorable result, it protected itself by assigning its claims to Cerullo in exchange for his agreement not to confirm the award. For the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

/Ada Brown/
ADA BROWN
JUSTICE

150230F.P05

–17–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GREAT AMERICAN LLOYDS
INSURANCE COMPANY AND MID-
CONTINENT CASUALTY COMPANY,
Appellants

No. 05-15-00230-CV          V.

VINES-HERRIN CUSTOM HOMES
L.L.C., HERRIN-CUSTOM HOMES, INC.
AND EMIL G. CERULLO, Appellees

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-03-6903.
Opinion delivered by Justice Brown. Justices
Lang and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent
with this opinion.

It is **ORDERED** that the parties each bear their own costs of this appeal.


Judgment entered this 25th day of August, 2016.